UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VICTOR HERNANDEZ ROMAN,<br>Petitioner,<br>v.<br>BRUCE SCOTT, et al.,<br>Respondents. | CASE NO. 2:26-cv-01636-TL<br><br>ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS |

This matter is before the Court on pro se Petitioner Victor Hernandez Roman's Amended Petition for Writ of Habeas Corpus ("habeas petition"). Dkt. No. 9. Respondents are Bruce Scott, Warden of Northwest ICE Processing Center ("NWIPC") and Markwayne Mullin, Secretary of the United States Department of Homeland Security. *Id.* at 1. Having reviewed the petition, Respondents' response (Dkt. No. 13), Petitioner's traverse (Dkt. No. 16), and the relevant record, the Court GRANTS IN PART and DENIES IN PART the petition.

//

//

## I. Background

Petitioner is a native and citizen of Mexico. Dkt. No. 15-3 (Form I-213) at 2. He first came to the United States at age four, in 1988, at an unknown location. Dkt. No. 10 (Hernandez Roman Decl.) ¶ 3; *see also* Dkt. No. 15-3 at 2 (indicating Petitioner was born in 1984); Dkt. No. 14 (Cvitanovic Decl.)[1] ¶ 3. Petitioner has lived in the United States for roughly 39 years, has two adult United States citizen children, five brothers who are United States citizens, and a mother who is a United States permanent resident. Dkt. No. 10 ¶¶ 3, 4, 6. On several occasions nearly two decades ago, Petitioner was detained by Immigration and Customs Enforcement ("ICE") and was granted Voluntary Return to Mexico. Dkt. No. 15-3 at 4.

On September 27, 2024, Petitioner was convicted in Ada County Magistrate Court (Idaho) of misdemeanor Driving Under the Influence. *Id*. Nearly a year after the DUI conviction, Petitioner was convicted in Ada County Magistrate Court of misdemeanor "Wildlife–Fail to Carry License on Person or Exhibit on Request." *Id*. On March 19, 2026, Petitioner was charged with misdemeanor Driving Without Privileges, a case which ICE asserts it is not aware of the disposition. *Id*.; Dkt. No. 14 ¶ 11. That same day, the Boise, Idaho, ICE Fugitive Operations Team ("FOT") received information from a CAP Lead "indicating that Petitioner had a Driving Under the Influence . . . conviction and three prior voluntary returns from the United States." *Id*. ¶ 12. Then followed Petitioner's current immigration detention and habeas petition.

On April 13, 2026, ICE FOT conducted a targeted enforcement operation regarding Petitioner in Garden City, Idaho. Dkt. No. 15-3 at 3. On that day, deportations officers identified

[1] Some of the facts recounted in this Order are based on the declaration of Deportation Officer Vincent Cvitanovic (who does not claim to have firsthand personal knowledge of most of the facts he reports (*see* Dkt. No. 14 ¶ 2)), or on hearsay contained within narrative portions of documents in Petitioner's immigration record. The Court makes no findings as to whether these are true and correct statements of fact but does note that they appear to be uncontested by the Parties.

Petitioner driving his vehicle, pulled him over, confirmed his identification through Petitioner's admission and car registration, and detained Petitioner. *Id*. That same day, Petitioner was served with a Notice to Appear (Dkt. No. 15-1) and DHS Form I-200, an administrative warrant of arrest (Dkt. No. 15-2). On April 18, 2026, Petitioner was transferred to NWIPC. Dkt. No. 14 ¶ 14.

On April 29, 2026, Petitioner filed a motion for a bond hearing. On May 1, 2026, a bond hearing was held for Petitioner in immigration court in front of Immigration Judge ("IJ") Joshua Rosen. *See* Dkt. No. 15-4. At that hearing, the IJ determined that he did not have jurisdiction over the matter because Petitioner was mandatorily detained, but that if he did have jurisdiction, he would find Petitioner a flight risk. *See id*. at 2–3. The Parties assert that Petitioner appealed the bond denial order and that it is still pending, but do not indicate when the appeal was filed. *See* Dkt. No. 9 at 11; Dkt. No. 13 at 7. The bond denial order indicates that Petitioner's appeal was due June 1, 2026. Dkt. No. 15-4 at 3. On June 4, 2026, an immigration judge ordered Petitioner removed to Mexico. Dkt. No. 14 ¶ 16. On June 10, 2026, Petitioner timely appealed his order of removal. *Id*. Petitioner now brings the instant habeas petition, which is fully briefed and ripe for the Court's review.

## II. Legal Standard

### A. Immigration Habeas Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

### B. Injunctive Relief Legal Standard

A petitioner "seeking a permanent injunction . . . must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## III. Discussion

Petitioner challenges his detention as unlawful and requests his immediate release from detention. Dkt. No. 9 at 3–4. Petitioner brings several grounds for the requested relief, which include: (1) his detention by deportation officers without justification and without notice and a pre-deprivation hearing violate his right to due process (*id*. at 9–14); (2) his detention has become prolonged and removal is not reasonably foreseeable (*id*. at 20–22); and (3) the IJ who conducted Petitioner's bond hearing abused his discretion, committed legal error, and violated Petitioner's due process rights (*id*. at 22–26). Petitioner also requests that the Court enjoin Respondents from re-detaining Petitioner without first giving him a pre-deprivation hearing before a neutral party. *Id*. at 31.

### A. Constitutionality of Petitioner's Initial Detention

Petitioner's first challenge is to the constitutionality of his initial detention as violative of his due process rights. The Court does not reach this claim first, however, because of the possibility that it has been mooted by Petitioner's subsequent bond hearing, at which his eligibility for conditional release was considered. "Courts in this District have consistently held that, irrespective of other alleged legal errors, petitioners are not entitled to habeas relief when an IJ finds a separate basis for their detention and that basis is unchallenged" or found to be legally

sound. *Valdovinos v. Blanche*, No. C26-706, 2026 WL 1091282, at *4 (W.D. Wash. Apr. 22, 2026) (collecting cases). If a valid denial of bond or conditional release created a new lawful basis for detention, Petitioner's first claim can only establish that his *pre-hearing* detention was unlawful, a question that is beyond the scope of this Court's habeas review. *See Walker v. Wainwright*, 390 U.S. 335, 336 (1968); *cf. James v. Reese*, 546 F.2d 325, 328 (9th Cir. 1976) (where petitioner was presently serving criminal sentence, contention that he was wrongly denied bail "refers to a prior detention and is presently moot"). Therefore, the Court must first consider Petitioner's claim of legal error at the bond hearing.

**B. Whether Petitioner's Bond Hearing Was Constitutionally Sound**

The Court now turns to Petitioner's claim that the IJ who conducted Petitioner's bond hearing abused his discretion, committed legal error, and violated Petitioner's due process rights. Dkt. No. 9 at 22–26.

**1. Jurisdiction**

In general, the Court does not have jurisdiction to review discretionary bond decisions. Specifically, 8 U.S.C. § 1226(e) states, "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." However, Section 1226(e) does not "preclude 'habeas jurisdiction over constitutional claims or questions of law.'" *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). As such, "a district court has jurisdiction to review an [immigration judge's] discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1078 (W.D. Wash. 2026) (alteration in original) (quoting *Kharis v. Sessions*, Case No. C18-4800, 2018 WL 5809432 *4

(N.D. Cal. Nov. 6, 2018) (collecting cases)).

A habeas court's review of an IJ's bond determination is for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "Under an abuse of discretion standard, '[a reviewing court] cannot reweigh evidence but can only determine whether the BIA applied the correct legal standard.'" *Id.* at 785 (citation modified) (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)).

Petitioner argues that the IJ abused his discretion when he denied Petitioner bond because the IJ did not "correctly appl[y] the legal standard to a given set of facts" and issued an order "without reasoning." Dkt. No. 9 at 24. Therefore, Petitioner's claims fall squarely within the Court's jurisdiction because he challenges the constitutionality of his immigration bond proceeding and the resulting detention. *See Loya Medina v. Hernandez*, No. C26-772, 2026 WL 1260848, at *5 (W.D. Wash. May 7, 2026).

**2. Administrative Exhaustion**

The Ninth Circuit has required, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). "The exhaustion requirement is prudential, rather than jurisdictional . . . ." *Hernandez*, 872 F.3d at 988. Courts in the Ninth Circuit consider the *Puga* factors when determining if prudential exhaustion is required, which include whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Even if the *Puga* factors establish that administrative exhaustion is required, a court may waive the exhaustion requirement if a petitioner demonstrates the applicability of one of the *Laing* factors, which include: (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative remedies would be a futile gesture," (3) "irreparable injury will result," and (4) "the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

Respondents argue that the *Puga* factors weigh in favor of requiring administrative exhaustion, and that Petitioner has not demonstrated any reason to waive exhaustion under the *Laing* factors. Dkt. No. 13 at 6–8. Petitioner argues that the administrative exhaustion requirements should be waived because they would be "futile or incapable of providing meaningful relief." Dkt. No. 9 at 15 (citing *Laing*, 370 F.3d at 1000). Elsewhere, in Petitioner's declaration, he asserts that while living in the community, he held a job working at a restaurant and was responsible for assisting his elderly mother attending her eye appointments, as she is potentially going blind. *See* Dkt. No. 10 ¶¶ 8, 9, 18; Dkt. No. 9 at 3. Should Petitioner be forced to wait out his BIA appeal before proceeding with his habeas petition, he likely faces many more months in detention. *See Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1100 (W.D. Wash. 2026) (finding that statistics from 2026 show that the BIA appeal process is currently "substantially longer" than it was in 2024 when exhausting an administrative appeal required more than six months). Requiring exhaustion will therefore result in irreparable injury, because Petitioner will remain in detention during this extended period, unable to work and make a living, or take care of his elderly mother. *See, e.g.*, *Loya Medina,* 2026 WL 1260848, at *6 (waiving prudential exhaustion requirement due to irreparable injury in part because

"Petitioner's continued detention while awaiting agency review of her claims disrupts her ability to provide financial support and maintain the stability of her household, including care for her husband and children"); *Vasquez Lopez,* 830 F. Supp. 3d at 1101 (waiving prudential exhaustion requirement due to irreparable injury for "health and family care reasons"). Therefore, Petitioner has met his burden of demonstrating that irreparable injury will result if he were required to wait additional time for the BIA process to complete.

**3. Merits of Bond Hearing Claim**

When determining whether a noncitizen is a danger to the community or risk of flight, an IJ weighs nine factors, pursuant to BIA precedent. *See Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *see also Martinez*, 124 F.4th at 783. "These factors may include any or all of the following":

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Guerra*, 24 I. & N. Dec. at 40. "Bond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case." *Soto Gimenez v. Hernandez*, No. C26-966, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026). Neither Party explicitly states what burden of proof was applied at the bond hearing and who bore the burden. Even assuming without deciding that the petitioner bore the burden of proof by a preponderance of the evidence at the bond hearing, the Court finds that the IJ abused his discretion in this case.

"When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof." *Tavurov v. Noem*, No. C26-668, 2026 WL 1283513, at *6 (W.D. Wash. May 11, 2026) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. Jan. 16, 2019). "First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). "Second, it may be clear from the adjudicator's opinion itself that he simply did not apply the correct standard to the facts." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). Here, because the IJ did not issue a written bond memorandum, "the question is whether the evidence that the IJ relied on at the bond hearing could—as a matter of law—establish that [Petitioner] posed a flight risk." *Saparali Uulu v. Scott*, No. C26-1631, Dkt No. 15 at 13 (W.D. Wash. July 10, 2026) (where IJ did not explain what facts he relied on to reach flight finding, the district court relied on documents petitioner submitted to the IJ at the immigration bond hearing) (quoting *W.T.M. v. Bondi*, No. C25-2428, 2026 WL 262583, at *4 (W.D. Wash. Jan. 30, 2026) (alteration in original). The Court finds that it could not.

At Petitioner's bond hearing, the IJ made two findings: (1) that the IJ did not have jurisdiction because Petitioner was mandatorily detained pursuant to 8 U.S.C. 1225(b); and (2) that Petitioner is a flight risk. Dkt. No. 15-4 at 2–3. First, the IJ was incorrect as to the mandatory detention finding, as Petitioner is detained pursuant to Section 1226(a), as the Parties agree. *See* Dkt. No. 9 at 7; Dkt. No. 13 at 3. Second, the IJ's order does not specify what legal standard he applied, what evidence he considered, or why he believed Petitioner to be a flight risk. *See id*. Respondents provide that it is the practice and "agency policy" of the immigration court "that a written bond memorandum follows a negative bond determination only in the event of an appeal." Dkt. No. 13 at 11. But despite both Parties agreeing that Petitioner appealed the

bond denial, over five months have passed and no bond memorandum has been issued. Respondents argue, without any authority or support, that the proper remedy here is to order the IJ to issue a bond memorandum to complete the record. This Court will not compel the IJ to follow routine procedures of the immigration court, therefore, the Court declines to adopt Respondents' proposal.

In any event, Petitioner provides the Court with evidence he presented at his bond hearing, which established the following facts: (1) Petitioner came to the United States as a minor and has lived here for 39 years; (2) he has two United States citizen adult children, five United States citizen brothers, and a mother who is a permanent resident, (3) his mother is elderly and relies on Petitioner to take her to eye appointments for her ongoing vision struggles; (4) he submitted proof of successful completion of misdemeanor criminal probation, which included completion of a community service requirement; and (5) he had stable employment at a restaurant prior to his detention and will be able to resume that job if released. *See* Dkt. No. 9 at 25; Dkt. No. 10 ¶¶ 3–6, 16–18. Respondents do not dispute that such evidence was presented to the IJ and have provided no additional evidence of what records or arguments were presented to the IJ. Notably, despite Respondents' emphasis on Petitioner's criminal history, they do not assert that this history supports a flight risk finding or provide any evidence from the bond hearing that the IJ considered such history to indicate flight risk. Several courts in this District have found that an IJ errs when they find that a noncitizen who has a child who is a citizen of the United States, other family members in the area, steady employment, and community connections—while lacking any documented history of flight from authorities—poses a flight risk. *See, e.g.*, *Vasquez Lopez*, 830 F. Supp. 3d at 1101; *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1081 (W.D. Wash. 2026) (long-term resident of United States with deep family ties not a flight risk); *Loya Medina*, 2026 WL 1260848, at *7 (similar); *Garcia Miranda v. Hernandez*,

No. C26-906, 2026 WL 1328227, at *3–4 (W.D. Wash. May 13, 2026) (similar); *Padilla Paz v. Hernandez*, No. C26-1394, 2026 WL 1413096, at *7–8 (W.D. Wash. May 15, 2026) (similar); *Valdez-Reyes v. Scott*, No. C26-1251, 2026 WL 1361635, at *3 (W.D. Wash. May 15, 2026) (similar). As such, with the facts before the Court, the IJ simply could not, as a matter of law, have properly found that the preponderance of the evidence showed that Petitioner was a flight risk. Indeed—"no matter where the burden was placed—no reasonable fact finder could review the record before the immigration judge" and reach the conclusion that he did. *Haidari v. Scott*, No. C26-1655, 2026 WL 1628663, at *3 (W.D. Wash. June 5, 2026). "Even in the absence of a contemporaneous record of Petitioner's bond hearing, . . . it is clear from the existing record in this case that the IJ's bond denial was constitutionally deficient, because there are no circumstances in which the IJ could plausibly establish that Petitioner posed a flight risk" or a danger. *W.T.M.*, 2026 WL 262583, at *4 (citing *Garcia*, 2025 WL 3466312, at *7).

Given the record before the Court, the IJ reached a conclusion untethered to the evidence before him and erred as a matter of law in finding Petitioner poses a flight risk and in denying him bond. Because of this, the proceeding was fundamentally deficient, and Petitioner was denied due process of law. *See Soto Gimenez*, 2026 WL 1156075, at *6 ("Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations." (collecting cases)). Accordingly, the Court finds that Petitioner is currently in custody in violation of the laws or Constitution of the United States and is entitled to habeas relief.

**4. Appropriate Remedy**

District courts have "a fair amount of flexibility" in fashioning specific habeas relief. In line with other courts in this District, and given the Court finds Petitioner's bond hearing was

legally deficient and constitutionally inadequate, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Soriano*, 830 F. Supp. at 1081; *see also Tavurov*, 2026 WL 1283513, at *10 (finding IJ abused discretion in denying bond and ordering immediate release); *Loya Medina*, 2026 WL 1260848, at *8–9 (same); *Vasquez Lopez,* 830 F. Supp. 3d at 1103 (same). Accordingly, the Court orders Petitioner's immediate release.

*       *       *

Because the Court grants habeas relief and orders release based on Petitioner's second claim alone, it need not reach the merits of Petitioner's arguments that his initial detention was unlawful or that his detention has become unconstitutionally prolonged.

**C. Request for Injunctive Relief**

Petitioner requests, without citing any authority, that the Court "enjoin the government from restrictive conditions of release, the GPS monitoring and ankle monitoring." Dkt. No. 9 at 31. He also requests that Respondents be enjoined from re-detaining him without notice and a pre-deprivation hearing. There are standards a moving party must meet to be granted injunctive relief, none of which Petitioner addresses. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (establishing factors for entitlement to injunctive relief); *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018); *see generally* Dkt. No. 9. Therefore, Petitioner's request is DENIED.

**D. Repatriation to Idaho**

Petitioner requests that the Court orders Respondents to "repatriate [Petitioner] to a public place in Idaho[.]" Dkt. No. 9 at 31. Petitioner offers no authority for the Court to issue such an order. Therefore, Petitioner's request is denied.

## IV. CONCLUSION

Accordingly, Petitioner's Amended Petition for Writ of Habeas Corpus (Dkt. No. 9) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a) SHALL release Petitioner from detention **within twenty-four (24) hours** of this Order under appropriate conditions of release;

(b) SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(2) Petitioner's request that the Court enjoin Respondents from re-detaining him without notice or a pre-deprivation hearing, or from issuing "restrictive conditions of release," is DENIED.

(3) Petitioner's request that Respondents "repatriate [Petitioner] to a public place in Idaho" (*id*. at 31) is DENIED.

Dated this 21st day of October, 2016.

Tana Lin
United States District Judge